Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Demandante - Apelado<br><br>v.<br><br>METRO PACK CARIBE, INC.; **ANÍBAL VARGAS MALDONADO**; **ROLANDO VARGAS MALDONADO**; **WANDA IVELISSE VARGAS MALDONADO**; SUCESIÓN MARÍA SOTERA MALDONADO SEPÚLVEDA t/c/c MARÍA MALDONADO compuesta por sus herederos: ANÍBAL VARGAS MALDONADO; ROLANDO VARGAS MALDONADO; WANDA IVELISSE VARGAS MALDONADO; "JOHN DOE" Y "JANE DOE", estos últimos como posibles miembros de la Sucesión, cuyos nombres se desconocen; DEPARTAMENTO / SECRETARIO DE HACIENDA; CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES "CRIM"; ADMINISTRACIÓN PARA EL SUSTENTO DE MENORES; y, X, Y, Z<br><br>Demandados - Apelantes | TA2026AP00370 | Apelación procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Civil núm.: PO2022CV03468<br><br>Sobre: Ejecución de Hipoteca *In Rem* |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Por la vía sumaria, el Tribunal de Primera Instancia ("TPI") declaró "Ha Lugar" una acción de ejecución de hipoteca *in rem.* Según se explica en detalle a continuación, concluimos que procede la confirmación de la sentencia en atención a que el TPI resolvió

correctamente el único asunto que tenía pendiente (si se había pagado la deuda que este Tribunal resolvió estaba garantizada por la hipoteca).

I.

En diciembre de **2022**, el Banco Popular de Puerto Rico (el "Banco") presentó la acción de referencia, sobre ejecución de hipoteca *in rem* (la "Demanda"[1]), en contra de Metro Pack Caribe, Inc. (la "Corporación"), Rolando Vargas Maldonado, Aníbal Vargas Maldonado y Wanda Ivelisse Vargas Maldonado (los últimos tres, los "Herederos").

El Banco alegó que, el 21 de septiembre de 2005, otorgó un préstamo a la Corporación, mediante una línea de crédito (Flexicuenta de Negocios núm. 019-27223-5, o la "Línea de Crédito") por la suma de $50,000.00.

El Banco añadió que, el 27 de marzo de **2007**, la Corporación tomó prestado a Westernbank[2] $250,000.00 (el "Segundo Préstamo"), en conexión con lo cual se suscribió un *Acuerdo de Gravamen Mobiliario y Garantía Continua* (la "Garantía"), de conformidad con lo cual entregó en prenda un pagaré hipotecario por la suma principal de $84,000.00. Esta hipoteca grava un bien inmueble ubicado en la Urbanización Glenview Gardens (la "Propiedad"), inscrito a favor de los Herederos y su difunta madre, la señora María Sotera Maldonado Sepúlveda, quienes consintieron su constitución.[3]

---

[1] Entrada [1] Sistema Único de Manejo y Administración de casos ("SUMAC"), *Demanda.*

[2] El 30 de abril de 2010 el Federal Deposit Insurance Corporation ("FDIC") ordenó el cierre del banco Westernbank. De esta forma, el Banco adquirió del FDIC parte de la cartera de préstamos de Westernbank, entre los cuales se encuentra el que suscita la controversia ante este foro.

[3] Según surge del expediente la descripción del bien inmueble es la siguiente:
FINCA #25311
URBANA: Solar marcado con el número DD-13 del bosque Sección I de la Urbanización Glenview Gardens, radicado en el barrio Machuelo arriba del término municipal de Ponce, Puerto Rico, con una cabida de 360 metros cuadrados. Contiene una casa de concreto imperial de sala comedor, cocina, tres dormitorios, baño, balcón y marquesina. En linderos: por el Norte, en 24 metros con

**Según los términos del Segundo Préstamo, la Corporación estaba obligada a saldar y cancelar la Línea de Crédito con el producto de aquél**. No obstante, se alegó que la Corporación no cumplió con dicha obligación, aunque luego saldó el Segundo Préstamo. El Banco sostuvo que, como los términos de la Garantía incluían cualquier obligación de la Corporación con Westernbank, ello facultaba al Banco, como sucesor de Westernbank, a ejecutar la misma para recobrar el balance no pagado de la Línea de Crédito.

Luego de varios trámites, el 27 de septiembre de 2024, el TPI dictó una *Sentencia*[4] mediante la cual, por la vía sumaria, declaró sin lugar la Demanda. El TPI razonó que la Garantía no se extendía a la Línea de Crédito, sino únicamente al Segundo Préstamo, el cual fue saldado.

No obstante, el Banco apeló, como consecuencia de lo cual, otro panel de este Tribunal revocó la referida sentencia del TPI. Véase Sentencia de 5 de febrero de 2025, KLAN202400966, o la "Sentencia del TA")[5]. Según la Sentencia del TA, los siguientes hechos no estaban en controversia:

> 1. El 19 de septiembre de 2005, Banco Popular le indica al Sr. Julio Hernández Nieves, que se había aprobado la solicitud de crédito comercial bajo los siguientes términos:
>    a. Deudor: Metro Pack Caribe Inc.
>    b. Cantidad: $50,000.00 Reserva Flexicuenta 019-272235
>    c. Propósito: Capital de Trabajo
>    d. Término: Revisión Anual. Fecha de Revisión 4/30
>    e. Plan de Pago: Pago mínimo 1/24 – Frecuencia Diaria
>    f. Tasa de Interés: Tasa de interés primario + 3.00% Fluctuante.
>    g. Comisión: $300 Cuota Anual
>    h. Prepago: Ninguno

---

el solar número 14; por el Sur, en 24 metros con el paseo público; por el Este, en 15 metros con la calle E-6; y por el Oeste, en 15 metros con el paseo público.

Se segrega de la finca número 25,111, inscrita al folio 246 del tomo 924 de Ponce, por su inscripción primera.

Finca número 25,311 consta inscrita al folio 133 del tomo 936 de Ponce, Registro de la Propiedad de Puerto Rico, Sección Primera de Ponce.

[4] Entrada 47 SUMAC *Sentencia.*
[5] Entrada 53 SUMAC *Sentencia* del Tribunal de Apelaciones.

    i. Colateral: Ninguno

2. En la carta enviada por Banco Popular el 19 de septiembre de 2005 se establecieron garantías ilimitadas y continuas por parte del Sr. Julio Hernández y su esposa; y el Sr. Aníbal Vargas y su esposa para la otorgación de la Flexicuenta de Negocios.

3. Para la obtención de la línea de crédito de negocio, el 21 de septiembre de 2005 se aprobó por unanimidad de los miembros de Metro Pack, una resolución corporativa en donde se autorizaba que se le concediera la línea de crédito rotativa, en forma de reserva Flexicuenta por la suma principal de $50,000.00 solicitada a Banco Popular.

4. El 21 de septiembre de 2005 Metro Pack Caribe Inc. obtuvo una Flexicuenta de Negocio del Banco Popular de Puerto Rico por la cantidad de $50,000.00 con número de cuenta 019-27223-5, por la cual no otorgó colateral y era "not secured".

5. El 27 de marzo de 2007 Metro Pack Caribe, Inc. suscribió un Contrato de Préstamo a Plazos por la cantidad de $250,000.00 a favor de Westernbank Puerto Rico, cuyo propósito, entre otras cosas, era cancelar la línea de crédito de Banco Popular por la cantidad de $50,000.00.

6. El 27 de marzo de 2007, Aníbal Vargas Maldonado, Rolando Vargas Maldonado, Wanda Ivelisse Vargas Maldonado y María Sotera Maldonado Sepúlveda consintieron realizar una Hipoteca en Garantía de Pagaré con Interés Fluctuante a favor de Westernbank Puerto Rico sobre la propiedad inmueble con número de finca 25,311 con el fin de garantizar el pago del Contrato de Préstamo a Plazos.

7. En la misma fecha, suscribieron un Acuerdo de Gravamen Mobiliario y Garantía Continua y un Pagaré Hipotecario, mediante afidávit núm. 3948, por la cantidad de $84,000.00.

8. El propósito por el cual se constituyó el Acuerdo de Gravamen Mobiliario y Garantía Continua, Hipoteca en Garantía de Pagaré con interés Fluctuante y el Pagaré por la cantidad de $84,000.00 fue para garantizar el Contrato de Préstamo a Plazos a favor de Westernbank suscrito el 27 de marzo de 2007 por la suma de $250,000.00.

9. El 11 de agosto de 2022, la Sra. Mayra M. Baber Conde, Vice President & Team Leader Special Loans

Division – Small Businees Workout de Banco Popular, le indica, por medio de correo electrónico, que lo que ha encontrado es que "aparentemente se le entrego [sic] el pagare [sic] al Lcdo. Juan Forasteri abogado del Sr. Roberto Gonzalez [sic]. Seguiré investigando a ver si encuentro algún acuse de recibo".

10. El 30 de agosto de 2022, la Sra. Lumar M. Pizarro Feliciano, Commercial Relationship Officer Special Loans Division, Bankrupcy Section de Banco Popular, envió un correo electrónico indicando que "[d]urante la tarde de ayer la sucursal solicitó el pagaré a la Bóveda Comercial. Se deben estar comunicando con usted para coordinar la entrega del mismo".

11. El 10 de agosto de 2022, Banco Popular le dirige una carta al Sr. Aníbal Vargas Maldonado en donde le indica que el préstamo comercial de Metro Pack Caribe núm. 01-2542560-8801 está vencido y tiene un balance adeudado, por concepto del principal, de $85,067.34.

12. En la Certificación Registral emitida por el Registro de la Propiedad de Ponce, Sección I sobre la Finca 25311, se establece como Carga y Gravamen la Hipoteca con garantía de Pagaré constituida por medio del afidávit 3948 a favor de Westernbank Puerto Rico por la suma de $84,000.00.

**En la Sentencia del TA se concluyó que la Garantía sí se extendía a la Línea de Crédito**; a esos efectos, se dispuso:

[...] al Westernbank ceder el pagaré a BPPR se perfeccionó la garantía mobiliaria inherente a aquel y en la medida que este no está sujeto a ninguna condición, se torna eficaz la orden o promesa incondicional de pago. En otras palabras, el BPPR, como cesionario, puede reclamar el pago de la obligación representada por el instrumento negociable. Lo anterior significa, que al tornarse eficaz la orden o promesa de pago representada por el pagaré, se activa, a su vez, la eficacia colateral de la garantía inmobiliaria que respaldaba el cumplimiento de la obligación representada por el primero. O lo que es lo mismo, BPPR tiene una obligación doblemente garantizada, a saber: por el instrumento negociable y por la garantía inmobiliaria que le sirve de colateral ("security follows de debt"). Por tal razón, BPPR puede ejecutar la garantía inmobiliaria que representa el pagaré de $84,000.00, en cumplimiento de la deuda impagada por concepto de la línea de crédito.

Sin embargo, el panel de este Tribunal, en aquella ocasión, estimó que el asunto debía **devolverse al TPI** para la resolución de

un asunto que, a su juicio, todavía estaba en controversia: "si se pagó la Línea de Crédito …".

Retomados los procedimientos en el TPI, los Herederos contestaron la Demanda[6]; en lo pertinente, añadieron como defensa afirmativa la prescripción extintiva. El TPI autorizó que las partes realizaran descubrimiento de prueba adicional.[7]

Mientras tanto, el 24 de julio de 2025, los Herederos presentaron una *Moción de Desestimación*; arguyeron que la causa de acción del Banco estaba prescrita. El Banco se opuso; planteó que los Herederos habían renunciado "tácitamente" a dicha defensa al no invocarla antes de contestar la Demanda. Además, arguyó que el término prescriptivo aplicable a una acción de ejecución de hipoteca *in rem* es de 20 años. El 2 de septiembre, el TPI denegó la referida moción.

Por su parte, el 29 de agosto, los Herederos presentaron una *Moción en Solicitud de Remedio y de Orden a Tenor con la Regla 34.2 de Procedimiento Civil*[8]. Afirmaron que el Banco objetó descubrir información pertinente a la controversia sobre el pago de la Línea de Crédito. Señalaron que las preguntas objetadas fueron las siguientes:

PREGUNTA #1

Con relación a la persona que contesta este interrogatorio, indique lo siguiente:

f) Detalle y describa, lo más específicamente posible, su conocimiento sobre el funcionamiento y los procesos bancarios estándar (en ingles conocidos como "Standard Operation Procedures") en el Banco Popular de Puerto Rico, para la aprobación y manejo de una línea de crédito comercial.

g) Si trabaja, y desde cuándo, casos de crédito comercial que incluyan líneas de crédito en el Banco Popular de Puerto Rico.

---

[6] Entrada 55 SUMAC *Contestación a Demanda.*
[7] Entrada 62 SUMAC *Minuta.*
[8] Entrada 79 SUMAC *Moción en Solicitud de Remedio y de Orden a Tenor con la Regla 34.2 de Procedimiento Civil.*

i) Manejó usted o estuvo a cargo, en algún momento, de la cuenta comercial de Metro Pack Caribe, Inc.

PREGUNTA #2
En relación con la cuenta del Banco Popular de Puerto Rico, FlexiCuenta de Negocios #019-272235 a nombre de Metro Pack Caribe, Inc, conteste y/o provea la siguiente información y/o documentos:

a) Provea copia de todos y cada uno de los Estados de Cuenta, incluyendo copia o imagen de los cheques girados contra dicha cuenta, desde que se abrió la misma hasta su última transacción.

b) Provea todos los nombres y sus direcciones en sus récords, de todas y cada una de las personas autorizadas y/o firmantes (depositantes y/o codepositantes) a realizar cualquier transacción en dicha cuenta, desde que se abrió la misma hasta su última transacción.

Luego de que el Banco se opusiera a la referida moción, el TPI denegó la misma el 12 de septiembre.[9]

El 29 de agosto, el Banco presentó una *Solicitud de Sentencia Sumaria IN REM*[10] ("la Moción").  Arguyó que los demandados no demostraron que exista prueba de que la Línea de Crédito se pagó. Además, en apoyo a su contención sobre falta de pago, acompañaron varios documentos, incluida una declaración jurada suscrita por Alejandra Ramos Mercado (la "Declaración")[11].  De esta declaración surge que: 1) al 31 de agosto de 2025 existe una deuda a favor del Banco derivada de la Línea de Crédito; 2) que esta fue garantizada con una hipoteca en garantía de pagaré a la orden del Banco, o su presentación; 3) que el Banco es poseedor y tenedor de buena fe del pagaré; y 4) que la deuda esta vencida, no ha sido satisfecha y es líquida y exigible.

Los Herederos se opusieron a la Moción[12].  Arguyeron que el Banco no había probado satisfactoriamente la existencia de la

---

[9] *Véase* Entrada 84 SUMAC *Orden*; *véase, además* Entrada 85 SUMAC *Orden*; *véase, además* Entrada 89 SUMAC *Orden.*
[10] Entrada 82 SUMAC *Solicitud de Sentencia Sumaria IN REM.*
[11] Entrada 82 SUMAC Solicitud de Sentencia Sumaria IN REM, Anejo Certificación de deuda en Ejecución de Hipoteca *IN REM.*
[12] Entrada 93 SUMAC *Oposición a Solicitud de Sentencia Sumaria y Solicitud de que se Dicte Sentencia Sumaria a Favor de los Codemandados Comparecientes.*

deuda.  Alegaron que la Línea de Crédito se saldó al otorgarse el Segundo Préstamo, pues del mismo surge que uno de sus propósitos era saldar la Línea de Crédito.  Plantearon que, de conformidad al uso y costumbre (*standard operating procedure*), en ocasión del cierre del Segundo Préstamo, Westernbank tenía que haber liquidado directamente con el Banco la Línea de Crédito.  También sostuvieron que la Declaración no estableció el conocimiento por su suscribiente del récord de negocio pertinente.

El 7 de abril, el TPI notificó una *Sentencia* (la "Sentencia")[13] mediante la cual declaró con lugar la Demanda.  El TPI determinó que no había controversia sobre los siguientes hechos:

> [...]
> 13.     En el "Schedule F-Creditors Holding Unsecured Nonpriority Claims", presentado ante la Corte de Quiebras, el codemandado Aníbal Vargas Maldonado, admitió bajo pena de perjurio, que la deuda reclamada por BPPR, estaba insoluta.
>
> 14.     Conforme certificó BPPR, al 31 de agosto de 2025, existe una deuda a favor de BPPR, en cuanto a la línea de crédito número 101-2542560-8801, por la suma de principal de $50,000.00; intereses acumulados por la suma de $51,452.25; los intereses pactados que se continúen generando a partir de 1 de septiembre de 2025 en adelante, a razón de $14.38 diarios hasta su pago total y definitivo; y la suma de $8,400.00, por concepto de honorarios de abogado pactados, por ser necesario el cobro de dinero por la vía judicial; más las costas y gastos.
>
> 15.     La parte demandada, no ha producido evidencia que acredite el pago de la línea de crédito por la suma de $50,000.00.
>
> 16.     La obligación anteriormente relacionada, fue garantizada con hipoteca en garantía de pagaré a la orden de BPPR, o a su presentación, por la suma de principal de $84,000.00, sobre la Finca Núm. 25,311 del término municipal de Ponce, Puerto Rico.
>
> 17.     BPPR es poseedor y tenedor de buena fe del pagaré garantizado con la hipoteca antes mencionada.
>
> 18.     BPPR, como antecesor en derecho de Westernbank, advino a la condición de tenedor del pagaré hipotecario por la suma de $84,000.00, garantizado por una hipoteca sobre la finca #25,311,

---

[13] Entrada 99 SUMAC *Sentencia.*

con capacidad para ejecutar dicho pagaré sobre esta última.

Inconformes, el 12 de abril, los Herederos presentaron la apelación que nos ocupa; formulan los siguientes señalamientos de error:

> Erró el TPI al Dictar Sentencia Sumaria a favor de la parte Demandante-apelada, declarando ha lugar la Demanda en su totalidad, cuando existe una Controversia sobre un hecho material y esencial, para lo cual la parte demandante apelada no ofreció prueba adicional alguna.

> Erró el TPI en la aplicación del derecho, en específico las disposiciones de la Regla 36.5 de Procedimiento Civil, en cuanto a los requisitos que dicha regla impone al promovente de una solicitud sentencia sumaria, los cuales no fueron cumplidos por la parte demandante-apelada, y aún así dict[ó]s sentencia sumaria a favor de la parte demandante apelada.

El Banco presentó su alegato en oposición.  Resolvemos.

## II.

La sentencia sumaria es un mecanismo cuya finalidad es "propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario". *Meléndez González et. al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F Montalvo,* 189 DPR 414, 430 (2013).  Este mecanismo procesal se rige por la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.  En particular, la Regla 36.3 (e) de las de Procedimiento Civil, *supra,* dispone que procede dictar sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, si la hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica.  Así, se permite disponer de asuntos pendientes ante el foro judicial sin necesidad de celebrar un juicio, ya que únicamente resta aplicar el derecho a los hechos no controvertidos. *Meléndez González et. al., supra; SLG Zapata-Rivera,*

*supra*; *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 128 (2012).

Si se concluye que "existe una controversia real y sustancial sobre hechos relevantes y pertinentes", no procede dictar sentencia sumaria. *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Meléndez González et. al., supra*; *Ramos Pérez,* 178 DPR a la pág. 213, citando a J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609; *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001); *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563, 577 (1997).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer, mediante prueba admisible en evidencia, la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Ramos Pérez, supra*; *Vera v. Dr. Bravo,* 161 DPR 308, 332-333 (2004). Cuando de las propias alegaciones, admisiones o declaraciones juradas, surge una controversia de hechos, la moción de sentencia sumaria es improcedente. *Mgmt. Adm. Servs., Corp. v. E.L.A.,* 152 DPR 599, 610 (2000).

Por su parte, quien se oponga a que se dicte sentencia sumaria debe controvertir la prueba presentada. La oposición debe exponer de forma detallada y específica los hechos pertinentes para demostrar que existe una controversia fáctica material, y debe ser tan detallada y específica como lo sea la moción de la parte promovente pues, de lo contrario, se dictará la sentencia sumaria en su contra, si procede en derecho. Regla 36 (c) de las de Procedimiento Civil, *supra.* Cuando la moción de sentencia sumaria está sustentada con declaraciones juradas u

otra prueba, la parte opositora no puede descansar en meras alegaciones y debe proveer evidencia para demostrar la existencia de una controversia en torno a un hecho material. A tales efectos, el juzgador no está limitado por los hechos o documentos que se aduzcan en la solicitud, sino que debe considerar todos los documentos del expediente, sean o no parte de la solicitud de sentencia sumaria, de los cuales surjan admisiones hechas por las partes. *Const. José Carro*, 186 DPR a la pág. 130, citando a *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 280-281 (1990). Por otro lado, si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada, el TPI podrá dictar la solicitud de sentencia sumaria a favor del promovente. *SLG Zapata-Rivera*, 189 DPR a la pág. 432. No obstante, esta debe de proceder en derecho. *Íd.*

En cuanto a las declaraciones juradas, la Regla 36.5 de las de Procedimiento Civil indica que estarán sustentadas en el "conocimiento personal del o de la declarante". (32 LPRA Ap. V, R. 36.5). Además, deberán contener "aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que él o la declarante está cualificado para testificar en cuanto a su contenido". *Íd.*

### III.

Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y sus causahabientes. Artículo 1044 del Código Civil[14], 31 LPRA ant. sec. 2994. De ahí nace la definición de un contrato, a saber, la obligación de dar, hacer o no hacer una cosa. Art. 1206 del Código Civil 31 LPRA ant. sec. 3371. La obligación contractual se configura cuando concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2)

---

[14] Al momento de los hechos era vigente el Código Civil de Puerto Rico de 1930.

objeto cierto que sea materia del contrato; y (3) causa de la obligación. Art. 1213 del Código Civil 31 LPRA ant. sec. 3391. Al concurrir lo anterior, se perfecciona el contrato y, desde entonces, este obliga al cumplimiento de lo pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, el uso y la ley.

De ordinario, los contratos no tienen requisitos de forma. El Artículo 1230 del Código Civil, 31 LPRA ant. sec. 3451, establece que los "contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez", esto es, consentimiento, objeto y causa. Por otro lado, una vez perfeccionados, los contratos tienen fuerza de ley entre las partes, "y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley". Art. 1210 Código Civil 31 LPRA ant. sec. 3375. Véase, además, *Oriental Bank v. Perapi et al.*, 192 DPR 7,15 (2014); *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 8 (2015).

Por su parte, el Artículo 1631 del Código Civil establece que:

[p]or el contrato de préstamo, una de las partes entrega a la otra, o alguna cosa no fungible para que use de ella por cierto tiempo y se la devuelva, en cuyo caso se llama comodato, o dinero u otra cosa fungible, con condición de volver otro tanto de la misma especie y calidad, en cuyo caso conserva simplemente el nombre de préstamo. (31 LPRA ant. sec. 4511).

A su vez, el Código Civil establece que quien "recibe en préstamo dinero u otra cosa fungible, adquiere su propiedad, y está obligado a devolver al acreedor otro tanto de la misma especie y calidad". Art. 1644 Código Civil (31 LPRA ant. sec. 4571), véase, además, *Torres, Torres v. Torres, et al*, 179 DPR 481, 492-93 (2010). De esta forma, al ser el contrato una obligación unilateral "por generar obligaciones a cargo del prestatario, éste estará obligado a

entregar lo prestado —con sus intereses si se pactaron— una vez el término haya vencido". *Torres, Torres, supra.*

IV.

Como regla general, los derechos reales nacen y se extinguen fuera del Registro de la Propiedad; por lo cual este tiene principalmente una función declarativa. Véase *Oriental Bank v. Díaz Pagán*, 2025 TSPR 130, 217 DPR __ (2025). Ahora bien, existen en el ordenamiento jurídico derechos reales de naturaleza constitutiva, entre ellos la hipoteca. *Íd.*

De esta manera, para que se constituya una hipoteca voluntaria, es un requisito de forma que se otorgue en escritura pública y se inscriba en el Registro. Art. 188 de la Ley núm. 198 del 8 de agosto de 1979 conocida como la Ley Hipotecaria y del Registro de la Propiedad, 30 LPRA sec. 2605 (ed. 1979)[15]. Por tanto, "la escritura es un requisito formal que materializa la conexión de un derecho real, la inscripción es el acto que asegura la existencia de este derecho". *Oriental Bank v. Díaz Pagán, supra.* (Citando a L Rivera Rivera, derecho Registral Inmobiliario Puertorriqueño, 3ra ed., San Juan, Jurídica Editores, 2012, pág. 45).

La hipoteca es descrita como:

> […] un derecho real que, ya de momento, sujeta o vincula lo hipotecado, cualquiera que sea su titular, al poder de exigir eventualmente la realización de su valor, así como la adopción de medidas dirigidas a salvaguardarlo, todo en seguridad o garantía de la efectividad de alguna obligación dineraria, y cuyo derecho es de carácter accesorio, indivisible, de constitución registral, y grava bienes […], ajenos y enajenables, que permanecen en posesión de su propietario o titular, y el cual implica un poderoso instrumento del crédito territorial. *Delgado Pol v. Pietri Vélez*, 208 DPR 557, 573 (2022) (Citando a R.M. Roca Sastre y otros, Derecho hipotecario, 9na ed., Barcelona, Ed. Bosch, 2009, T. VIII, págs. 15–16.).

De esta forma, para que se constituya una hipoteca es necesario cumplir los parámetros dispuestos en el ordenamiento, otorgar

---

[15] Ley vigente al momento de los hechos.

mediante escritura pública y correspondiente inscripción en el Registro; de lo contrario se estaría ante un crédito de carácter personal. *Oriental Bank v. Díaz Pagán, supra.* (Citando a *Capó v. Sunc. Rivera Zayas,* 47 DPR 642 (1934)).

Asimismo, debido a su naturaleza accesoria, la vigencia de la hipoteca no es independiente a la vigencia del principal. *Westernbank v. Registradora,* 174 DPR 779, 784-85 (2008). De esta forma:

> […], el contrato de hipoteca supone la existencia de dos figuras jurídicas, a saber, una obligación principal, y la hipoteca en sí, que sirve de garantía al acreedor de la primera. No se concibe una hipoteca sin obligación garantizada. *Liechty v. Descartes Sauri,* 109 DPR 496, 501-502 (1980) (Citando a *Carreras v. Am. Colonial Bank,* 35 DPR 90, 94-96 (1926).

Por lo tanto, la hipoteca subsistirá mientras este vigente el crédito garantizado. *Westernbank, supra.*

La "acción de ejecución de hipoteca por la vía ordinaria es de naturaleza mixta: la personal y la real". *First Fed. Savs. v. Nazario et alts.,* 138 DPR 872, 879 (1995). En consecuencia, el acreedor puede optar por ejercer la acción personal o solicitar la ejecución de la garantía hipotecaria. *Íd.*

V.

Concluimos que procede la confirmación de la Sentencia, pues del récord surge, de forma incontrovertida, que la Línea de Crédito no se pagó, y este era el único asunto que tenía el TPI ante sí en esta etapa del caso[16].

En efecto, en apoyo a la Moción, el Banco presentó la Declaración Jurada, en la cual se acredita que, según los récords de negocio pertinentes, la Línea de Crédito no se ha pagado. La Declaración fue suscrita por una empleada del Banco en calidad de

---

[16] Independientemente de nuestro criterio particular sobre la corrección de la Sentencia del TA, lo allí resuelto constituye la ley del caso y, a nuestro juicio, no se configura aquí situación excepcional alguna que nos permita apartarnos del respeto a dicha norma.

Oficial de Relaciones Comerciales de la División de Préstamo Especiales del Banco Popular, por lo cual fue preparada y sustentada en el conocimiento personal de la declarante. Esta prueba no fue controvertida por los demandados con documento o declaración alguna. Más aún, surge del récord, de forma incontrovertida, que, luego de otorgado el Segundo Préstamo, uno de los Herederos admitió que la Línea de Crédito no se había saldado.[17]

Los Herederos descansan, en esencia, en que Westernbank "debe" haber saldado la Línea de Crédito con parte de los fondos objeto del Segundo Préstamo. No obstante, esta propuesta fáctica no pasa de ser una mera alegación, sin ninguna prueba que la sustente.

Aunque los Herederos dirigieron descubrimiento de prueba al Banco en torno a su uso y costumbre en situaciones análogas, el cual no fue contestado, ello no afecta nuestra conclusión. Independientemente de cuál podría haber sido la respuesta del Banco al respecto, ello no sería suficiente para probar que, en este caso particular, la Línea de Crédito en efecto fue saldada por Westernbank al otorgarse el Segundo Préstamo. Peor aún, sería muy limitada la utilidad probatoria de cualquier contestación del Banco al referido descubrimiento, en atención al hecho de que fue Westernbank, y no el Banco, quien otorgó el Segundo Préstamo[18].

## VI.

Por los fundamentos antes expuestos, se confirma la sentencia apelada y se devuelve el caso al TPI para la continuación

---

[17] Véase Entrada 53 SUMAC Sentencia del Tribunal de Apelaciones, pág. 15, véase, además, Entrada 40 SUMAC Anejo Petición de Quiebra, pág. 32.

[18] Contrario a lo sugerido por los Herederos, la presente causa de acción no está prescrita, pues el término aplicable es el de 20 años, por las razones expuestas por el Banco en su oposición a la moción de desestimación de los Herederos. Véase Entrada 81 SUMAC.

de los procedimientos de forma compatible con lo aquí expuesto y resuelto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones